MOSELEY v. MILLEDGE HANKINSON.

SAME v. EDGAR HANKINSON.

1. Where property was conveyed in trust for the separate use of a married woman during life, then to be conveyed and delivered to her issue living at the time of her death, the remainder is contingent.
2. Where a tract of land so held was sold by order of the court on the *ex parte* application of the trustee and the life tenant, none of the issue then *in esse* and within the reach of the court being made parties, *held,* that there being no representative of the contingent remaindermen before the court, there was no transfer of the interest in this land, either of the issue *in esse* at the time of the order or of those subsequently born.
3. In the proceeding in court for the sale of this land, the trustee was not a representative of the interests of the contingent remaindermen.
4. *Thomas* v. *Poole,* 19 *S. C.,* 323; *Ex parte Tunno, Bail. Eq.,* 395; *Ex parte Calmes,* 1 *Hill Ch.,* 112, and *Ex parte Copeland, Rice Ch.,* 69, explained and reconciled herewith.

Before Wallace, J., Richland, September, 1883.

The opinion of this court fully states the nature of the action and all the facts of the case. The judge charged the jury as follows:

Under the case of *Faber* v. *Police,* 10 *S. C.,* 376, I charge you that the plaintiffs had not a vested interest in the land in dispute, but that they were contingent remaindermen. Under the decisions of the Supreme Court of the United States, and of many of the states, they would be held to be vested remaindermen, but not so in this state. The naked question now is, are the plaintiffs, who were not made parties in the proceedings under which the land was sold, bound by those proceedings? They were contingent remaindermen, and in the case of *Thomas* v. *Poole* (19 *S. C.,* 323), a late decision of the Supreme Court of this state, it has been decided that contingent remaindermen are not necessary parties to a proceeding instituted for the sale of land. Under the case of *Thomas* v. *Poole,* I charge you that plaintiffs were not necessary parties to the proceedings in question, though some of them were then living; that Milledge Han-

kinson and D. J. Walker, trustees, took a fee simple title, and that these plaintiffs cannot now question his title; and that hence your verdict must be for the defendants in both cases.

The jury found a verdict for the defendants, as instructed by the judge, in both cases, and the plaintiffs appealed upon the following exceptions:

I. Because his honor, the presiding judge, erred in charging the jury that the words in the deed of James Moseley and wife to Wm. Fortune, trustee, created contingent remainders in the issue or lineal descendants of Rebecca Moseley, and not vested remainders.

II. Because his honor, the presiding judge, erred in charging the jury that the plaintiffs, as well those who were then *in esse* as those who were afterwards born, were barred by the proceedings in the case of *Ex parte* James Moseley and wife and Wm. Fortune, and the deed given thereunder to Milledge Hankinson, trustee; whereas it is submitted that they were not parties thereto, and are not bound thereby.

III. Because his honor, the presiding judge, erred in directing a verdict for the defendants.

IV. Because his honor, the presiding judge, erred in not charging as requested by the plaintiffs, to wit, "that as matter of law the jury must find a verdict for the plaintiffs, because they are not barred by the proceedings in the case of *Ex parte* James Moseley *et al.*, and their right of action did not accrue until the death of their mother, Rebecca, in 1881, the date of her death as admitted."

*Messrs. Henderson Bros.*, for appellants.

*Messrs. Croft & Dunlap* and *H. M. Thompson*, contra.

March 16, 1885.   The opinion of the court was delivered by

Mr. Justice McIver.   These two cases, depending upon the same principles, were heard and will be considered together. The questions involved in this appeal arise out of the following state of facts:

Rebecca Moseley, the wife of James Moseley, and the mother

of the plaintiffs, being entitled, as one of the heirs at law of her father, to a share of his estate, the land which is the subject-matter of controversy in these cases was, with certain personal property, set apart as her share, under proper proceedings for the partition of her father's estate. But she being a married woman at the time, the court ordered that the share so allotted to her be settled on her "for her sole and separate use for life, and on her death, on her issue then living, in equal shares, as in cases of intestacy, and that the said parties execute deeds, to be approved by the commissioner of this court, to proper persons as trustees, for the purpose of effecting the said settlement thereby ordered." In pursuance of this order, a deed was duly executed to Wm. Fortune, on April 3, 1844, conveying to him the said land in trust "for the sole, separate, and exclusive and special use, benefit, and behoof of her, the said Rebecca Moseley, wife of the said James Moseley, for and during the term of her natural life, * * * and upon the death of the said Rebecca Moseley, that he, the said William Fortune, his heirs, executors, or administrators will convey, transfer, assign, and deliver over all and singular the said estate and property, both real and personal, that shall then [be] remaining, unto the issue or lineal descendants of her, the said Rebecca Moseley, which she shall or may have living at the time of her death, in such shares and portions as they, the said issue or lineal descendants, would be entitled to by the laws of this state, now of force, regulating and controlling the distribution of estates of intestates." This deed was approved by the commissioner in equity and duly recorded.

In February, 1845, an *ex parte* petition was filed in the Court of Equity by James Moseley and wife and Wm. Fortune, as trustee, praying that the trustee might be authorized to sell said land and invest the proceeds in the purchase of slaves, alleging that the land was unproductive, and being woodland yielded no support to the petitioner, Rebecca. This petition was referred to the commissioner to inquire and report upon the facts stated therein, "and also upon the expediency and probable benefit to the said Rebecca Moseley and children to change the property by selling the land and investing the proceeds in negro property." The commissioner having made his report, saying that the evi-

dence submitted to him showed that the change of investment proposed would be for the interest of Mrs. Moseley and her children, and recommending that the prayer of the petition be granted, an order was passed on February 12, 1845, confirming the report, and authorizing the trustee, Wm. Fortune, to sell the land and reinvest the proceeds in slaves, to be held by him upon the same trusts as are declared in the deed above mentioned.

The trustee having failed to make this change of investment as authorized, a rule was taken out against him on February 16, 1850, at the instance of James Moseley, requiring him to show cause why he should not be attached for a contempt in not obeying the order of February 12, 1845. In his return to this rule, which is sworn to on February 23, 1850, Wm. Fortune, amongst other things, stated that soon after the passage of said order, he was earnestly requested by Mrs. Moseley not to sell the land and buy slaves, as she was apprehensive that if this was done her husband would run the slaves and sell them, whereas he could not run the land; and disavowing any intention to treat the order of the court with contempt, averred his willingness to comply with the same by forthwith selling the land and in all other respects complying with the terms of said order of February 12, 1845.

On hearing this return, an order was granted, on May 22, 1850, that the rule "be discharged upon the following conditions, to wit: That the said Wm. Fortune do by the first of August next enter into bond and security, to be taken and approved by the commissioner, in the penalty of double the value of said land, conditional for the faithful performance of the trusts described by the order of Chancellor Harper, dated February 12, 1845, that is to say, if he has not hitherto given bond upon being appointed trustee." Whether this trustee ever gave such bond does not appear in the record. On April 15, 1851, the trustee, Wm. Fortune, in pursuance of the order of February 12, 1845, executed a deed for the land in controversy to the defendant, Milledge Hankinson, and Darling J. Walker, as trustees of Mrs. Sarah L. Hankinson, under which the defendants claim. The consideration mentioned in this deed was eleven hundred dollars, which, according to the evidence, was paid to the said

Wm. Fortune, but the same does not seem to have been invested in slaves, as required by the order of February 12, 1845.

Wm. Fortune died some time in 1853, and upon the petition of James Moseley and Rebecca, his wife, one John E. Plunkett was appointed trustee in his stead, and having duly executed his bond to the commissioner in equity, seems to have received the amount of the trust funds in the hands of the former trustee, Wm. Fortune, as would appear by his returns. In 1856 the said Plunkett having failed to make his annual returns, and having left the state, he was removed from office, and N. G. W. Walker was appointed trustee in his place, who likewise gave bond as such. Walker made several returns as trustee, in which he does not charge himself with anything received from his predecessor, and he having died in 1875, no further action appears to have been taken until after the death of Mrs. Rebecca Moseley, which event took place in the fall of 1881, when the present plaintiffs, on April 11, 1882, by proceedings in the Court of Common Pleas procured the appointment of W. J. Moseley as trustee in the place of Wm. Fortune, under the original deed of trust hereinabove mentioned, ignoring the intermediate substitutions mentioned above; and on June 12, 1882, the said W. J. Moseley, as trustee, conveyed the land in question to the plaintiffs, who were then the surviving children of Mrs. Rebecca Moseley, and soon thereafter these actions were commenced to recover possession of the said land.

The Circuit judge instructed the jury that under the original trust deed of April 3, 1844, executed under the order of the court requiring the share of Mrs. Rebecca Moseley in her father's estate to be settled to her sole and separate use for life, with remainder to such of her issue as might then be living, the children of Mrs. Moseley were entitled to contingent and not vested remainders, and that, therefore, they were not necessary parties to the proceedings under which the trustee, William Fortune, sold the land, and that consequently the defendants have valid title to the land in controversy which these plaintiffs cannot question. From the judgments rendered in accordance with such instructions the plaintiffs appeal, and by their appeal raise two questions: 1st. As to the nature of the estate which the children

took under the original trust deed. 2d. Conceding that they were contingent remaindermen, whether their rights, which have now become vested, are concluded by the order of sale in proceedings to which they were not parties.

Upon the first point raised by the appeal, we agree with the Circuit judge that the remainders were contingent and not vested under the authority of the case of *Faber* v. *Police*, 10 *S. C.*, 376, cited by him, which has been recognized and affirmed by the very recent case of *LeRoy* v. *City Council of Charleston*, 20 *S. C.*, 71.

The second question, however, presents much more difficulty. It appears from the evidence that at the time the petition was filed by James Moseley and wife and the trustee, William Fortune, for the sale of the land, and the reinvestment of the proceeds in slaves, Mrs. Moseley had five children living with her, and within the jurisdiction of the court, all but one of whom (Silvania, who predeceased her mother, leaving no issue) were originally plaintiffs in these actions, though one of them, Mrs. Price, has died since these actions were commenced, and her heirs have been substituted in her place. It also appears that before the deed under which defendants claim was executed, two more children were born to Mrs. Rebecca Moseley, Mary Ann and Sarah, and that the other two plaintiffs, Septima and Susan, were born after the execution of said deed. It seems, then, that at the time the petition for the sale of the land was filed, some of the contingent remaindermen, whose rights have subsequently become vested, were *in esse*, and could have been made parties, and the real question is whether they were necessary parties. Could their rights be divested unless they were made parties?

The general rule in equity undoubtedly is that all persons who are materially interested in the subject of the suit must be made parties, but it is equally true that this rule is subject to some exceptions; and the practical inquiry is, does this case fall within any of the exceptions? Without undertaking anything like a review of the cases, we think the authorities show that the contingent remaindermen who were *in esse*, and within the jurisdiction of the court, were necessary parties. In *Mitford's Equity Pleadings*, *174, it is said: "Contingent limitations and executory

devises to persons not in being may in like manner be bound by a decree against a person claiming a vested estate of inheritance; but a person in being claiming under a limitation by way of executory devise, not subject to any preceding vested estate of inheritance by which it may be defeated, must be made a party to a bill affecting his rights." See, also, *Story Eq. Pl.*, §§ 144–147, and 1 *Dan. Ch. Pl. & Prac.*, 314; *Hopkins* v. *Hopkins*, 1 *Atk.*, 590; *Giffard* v. *Hort*, 1 *Sch. & Lef.*, 386; *Lloyd* v. *Johnes*, 9 *Ves.*, 37; *Sherrit* v. *Brich*, 3 *Bro. C. C.*, 229. These authorities establish the doctrine that while as a general rule the contingent remaindermen are necessary parties, yet where they are not *in esse* at the time, and there is before the court a person entitled to a prior vested estate of inheritance, and, perhaps, if there is no prior vested estate of inheritance, then if the person entitled to the prior life estate and the trustees are parties, the court may make a decree that will conclude the rights of such contingent remaindermen; but they do not warrant the idea that contingent remaindermen who are *in esse* and can be made parties, can be safely dispensed with.

The subject seems to have been first considered in this state in the case of *Van Lew* v. *Parr*, 2 *Rich. Eq.*, 321. The question there, was whether a decree for the sale of real estate would bar the rights of contingent remaindermen who were not *in esse*, and who were not, and, of course, could not be, made parties to the proceedings under which the land was sold. But the court hesitated even to decide that question, not deeming it essential to the case then before the court. Subsequently, however, the same question was again presented to the court in the case of *Bofil* v. *Fisher*, 3 *Rich. Eq.*, 1, and there the court did decide that the court had power by its decree for the sale of real estate to bar the rights of contingent remaindermen not *in esse*, or residing abroad, whose names and places of residence are unknown, and who could not, therefore, be made parties. This, of course, implied that if such remaindermen were *in esse*, and could be made parties, that then they would be *necessary* parties. Accordingly, in the recent case of *LeRoy* v. *City Council of Charleston*, 20 *S. C.*, 71, this court held that in such a case the contingent remaindermen must be made parties in order to bar their rights.

The case of *Thomas* v. *Poole*, 19 *S. C.*, 323, does not, as seems to be supposed, conflict with this view. In that case the object was to set aside a sale made under proceedings in the Court of Probate, and one of the grounds relied upon was, that the children of Mrs. Thomas, who were contingent remaindermen, were not parties to such proceedings. All that the court held was that such a ground was not sufficient. Their rights had not vested and might never vest. Mrs. Thomas was still alive and might survive all of her children. It is true that the court did say that they were contingent remaindermen, and therefore it was unnecessary that they should have been made parties to the proceedings in the Court of Probate, and this remark, detached from the context in which it is found, has been relied upon to show that the court there decided the general proposition that contingent remaindermen are not necessary parties to a proceeding for the sale of real estate in which they have such contingent interest. But when the remark is read with reference to the context, it is perfectly manifest that all that was meant was *that so far as the case then before the court was concerned*, they were not necessary parties to the proceeding in the Court of Probate in such a way as to require the court to set aside the sale made under such proceedings. And when the language of the court, following that which is relied upon, is considered, it is perfectly clear that the court did not intend to decide, and did not decide, the general proposition that contingent remaindermen were not necessary parties. For the court proceeds to say: "It may be that the action of the court now will not bind them if they should happen to survive, but of this we give no opinion; we only mean to say that until they have vested rights they are premature in asking the assistance of the court by way of protection." This shows, beyond all dispute, that the question whether their rights, *when they became vested,* would be concluded by a decree in a case to which they were not parties was not passed upon.

The cases of *Ex parte Tunno, Bail. Eq.*, 395 ; *Ex parte Calmes,* 1 *Hill Ch.,* 112; and *Ex parte Copeland, Rice Ch.,* 69, relied upon by respondents to show that it had always been the practice of the Court of Equity in this state to entertain appli-

cations for the change of investment of trust property upon the *ex parte* application of the trustee, are in no wise in conflict with the view which we have advanced. In no one of these cases was the question which we are called upon to determine decided or even considered; and in the only one in which the question of parties was even mentioned (*Ex parte Tunno*) the *cestuis que trust* were required to be made parties. In fact, these cases were not applications for *the sale* of trust property at all, but were really applications for the removal of trust funds from this state to a state in which the parties beneficially interested resided; or for leave to invest a sum of money in the hands of a trustee, arising from a residuary bequest, in the purchase of land and slaves to be held by the trustee upon the same trusts as had been declared by the testator with reference to a specific bequest of slaves for the benefit of the *cestuis que trust.*

It seems to us, therefore, clear that this case does not fall within any of the exceptions to the general rule requiring all persons materially interested in the subject matter of the suit to be made parties, and that as far as the courts of this state have ever gone in dispensing with the presence of contingent remaindermen is, that where such remaindermen are not *in esse* or reside abroad, and their names and residences are not known, and they cannot therefore be made parties, their presence may be dispensed with and the court may proceed to make a decree which will bar the rights of *such* contingent remaindermen.

Now in this case, as we have seen, several of the contingent remaindermen whose rights have subsequently become vested were not only *in esse* at the time the petition for the sale of the land was filed, but were within the jurisdiction of the court and could have been made parties, and that these facts were known to the defendant, Milledge Hankinson, when he, with Darling J. Walker, became the purchasers from the trustee. It follows, therefore, that the rights of these contingent remaindermen are not barred, nor are those of the unborn contingent remaindermen; for, as it was practicable to have made some of the class parties who could have represented the interests of those who could not be made parties, and this was not done, there was no one before the court to represent the interests of the contingent remainder-

men when there could have been; and as the exception to the general rule, by which it is allowable to proceed without making contingent remaindermen who are not *in esse* parties, seems to be based wholly upon considerations of necessity, this case does not fall within the exception, and hence the rights of none of the contingent remaindermen are barred.

It may be said that the trustee who was invested with the fee in the legal estate being before the court he could represent, and did represent, the interests of all the parties, and there is some countenance for this suggestion in a dictum of Chancellor Dargan in *Williman* v. *Holmes,* 4 *Rich. Eq.,* at page 490–1; but we think a more correct view is taken by Chancellor Wardlaw in *Moore* v. *Hood,* 9 *Rich. Eq.,* at page 325, where he says: "The rule requiring beneficiaries to be parties where they are interested in the questions for adjudication is applicable although the trustees have the legal title, for trustees are not the real owners of the trust estate, and are rather agents of the beneficiaries for the execution of certain trusts, and it is among their duties to require the real owners to be brought before the court." Any other view, it seems to us, would logically lead to the conclusion that a trustee might convey without any order of the court. The very object of applying to the court is to obtain authority for disposing of the interests of others, and those really entitled to such interests must, if practicable, be made parties to any proceeding by which it is proposed to dispose of their interests.

The judgment of this court is that the judgments of the Circuit Court be reversed in both of the above entitled cases, and that the said cases be remanded to that court for a new trial.